

ATTORNEYS AT LAW
125 BROAD STREET, 39TH FLOOR   NEW YORK, NY 10004-2400
*www.sedgwicklaw.com*   212.422.0202 *phone*   212.422.0925 *fax*

*arthur.aizley@sedgwicklaw.com*
*michael.davisson@sedgwicklaw.com*
*valerie.rojas@sedgwicklaw.com*

May 10, 2012

*Via Electronic Court Filing "ECF"*
The Honorable Madeline Cox Arleo
United States District Court for the District of
New Jersey
M.L. King Jr. Federal Building & Courthouse
50 Walnut St., Room 2060
Newark, NJ 07102

Re:  *Picatinny Federal Credit Union v. CUMIS Insurance Society, Inc.*
     Civ. Action No. 2:11-cv-04853 (WHW)(MCA)
     *Proponent Federal Credit Union v. CUMIS Insurance Society, Inc.*
     Civ. Action No. 2:11-cv-05760 (WHW)(MCA)
     Status Conference Date: Friday, May 11, 2012 at 12:30 PM
     File No.: 00480-006356

Dear Magistrate Judge Arleo:

Defendant CUMIS Insurance Society, Inc. ("CUMIS") writes to respond to Picatinny Federal Credit Union's ("Picatinny") May 9, 2012 letter to the Court concerning outstanding discovery disputes.

As an initial matter, Picatinny's request that counsel for CUMIS travel to New Jersey for a further meet and confer is a needless attempt to subject CUMIS to pointless expense and burden.  The parties have met and conferred extensively, both telephonically and in multiple rounds of lengthy letters.  It is apparent that judicial intervention will be necessary to resolve the outstanding disputes.

However, in a good faith effort to resolve the outstanding discovery issues counsel for CUMIS can be in New Jersey on the morning of Wednesday May 16, 2012 for an in person meet and confer.  It is CUMIS' desire to resolve these disputes as quickly as possible and with as little judicial intervention as possible.

With respect to the outstanding discovery issues, while Picatinny makes a number of incomplete and inaccurate statements regarding CUMIS' discovery responses, Picatinny completely failed to address its own deficient discovery responses.  Therefore, the deficiencies in Picatinny's discovery responses are detailed below, followed by CUMIS' response to Picatinny's claims concerning CUMIS' discovery responses.

LA/1195720v1

The Honorable Madeline Cox Arleo
Re:  Picatinny Federal Credit Union v. CUMIS Insurance Society, Inc.
   Civ. Action No. 2:11-cv-04853 (WHW)(MCA)
   Proponent Federal Credit Union v. CUMIS Insurance Society, Inc.
   Civ. Action No. 2:11-cv-05760 (WHW)(MCA)
   Status Conference Date: Friday, May 11, 2012 at 12:30 PM
Page 2

## FACTUAL BACKGROUND

This is an action for coverage under a Credit Union Bond (the "Bond") issued by CUMIS Insurance Society, Inc. (CUMIS) to Picatinny Federal Credit Union (Picatinny).  Picatinny alleges that it is entitled to coverage for losses allegedly caused when the parent company of its loan servicer sold Picatinny's loans to Fannie Mae without remitting the proceeds.  Picatinny claims coverage as a "servicing contractor" under the "Employee and Director Dishonesty" and "Forgery and Alteration" coverage provisions.  CUMIS asserts that Picatinny is not entitled to coverage since the alleged loss was not caused by an entity while performing the functions of a servicing contractor, as the Bond requires.  CUMIS further points out that no documents were "forged" or "altered."  Further, the Bond only "applies to loss discovered by you while this Bond is in effect" and "[d]iscovery occurs when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred."  The Bond also includes a Termination Condition which provides that coverage terminates for any "employee" immediately upon Picatinny learning of any dishonest or fraudulent act by the employee.  Discovery on the termination clause is particularly important because of the report of an internal auditor, years before the discovery of the alleged fraud, that CU National may have been dealing dishonestly with Picatinny's customers.

On March 27, 2012 the parties met and conferred in order to resolve the outstanding discovery disputes detailed below.  In an effort to compromise on the largest issues Picatinny raises, discovery concerning the claims of other credit unions, CUMIS offered that if Picatinny produced certain documents pursuant to the meet and confer and provided written consent from the other credit unions permitting their documents to be released, CUMIS will provide claim documents relating to the other credit union's claims.[1]  CUMIS' offer remains open.  Therefore, once Picatinny provides written consent from the other credit unions, CUMIS can produce documents relating to other claims and a major point of contention will be resolved.

## PICATINNY'S DEFICIENT DISCOVERY RESPONSES

Picatinny's failure to respond to discovery generally relates to discovery concerning two key conditions in the Bond.  First, is the "termination condition."  The termination condition provides that termination for an employee (which would include CU National, if, as Picatinny contends, it is a servicing contractor) at any point that the insured learns of dishonest or fraudulent acts by the employee.  The dishonest or fraudulent acts need not be related to the insured's claim, as the provision is intended to preclude coverage for any employee that the insured already knows to have engaged in dishonesty.  Therefore, CUMIS has requested documents and information which directly concern, or would show, whether Picatinny was ever aware of fraudulent or dishonest conduct by CU National/U.S. Mortgage.  If such documents shows that Picatinny was aware of fraud or dishonesty by CU National/U.S. Mortgage, then that would immediately preclude coverage for any loss that occurred after point.  This provision is

---

[1] The offer is contained in CUMIS' March 28, 2012 confirmatory email to Picatinny, attached as Exhibit A.

Case 2:11-cv-04853-ES-MCA   Document 43   Filed 05/10/12   Page 3 of 10 PageID: 910

The Honorable Madeline Cox Arleo
Re:  Picatinny Federal Credit Union v. CUMIS Insurance Society, Inc.
       Civ. Action No. 2:11-cv-04853 (WHW)(MCA)
       Proponent Federal Credit Union v. CUMIS Insurance Society, Inc.
       Civ. Action No. 2:11-cv-05760 (WHW)(MCA)
       Status Conference Date: Friday, May 11, 2012 at 12:30 PM
Page 3

particularly important in this because Picatinny CEO William Darling testified in the Fannie Mae case that an internal auditor at Picatinny had in fact communicated concerns to Picatinny management about potential misconduct by CU National long before the alleged fraud was discovered. Accordingly, documents relating to termination are highly relevant and could have a conclusive effect on the litigation.

The second provision is the "discovery condition." The discovery condition determines when a loss is "discovered" under Bond, which in turn is relevant for various purposes under the Bond (i.e. deadlines for filing a notice of loss, termination of coverage upon discovery of loss, etc.). The Bond states that a loss is "discovered" when Picatinny learned of facts which should have caused a reasonable person to assume a covered loss has been, or will be incurred. Accordingly, CUMIS seeks discovery aimed at learning what Picatinny knew about CUMIS' situation and conduct, and when they first learned of red flags or other signs that should have alerted them to a potential fraud. Depending on when Picatinny learned of such facts, the discovery could have a conclusive effects on the litigation. For example, if audit documents show that Picatinny was aware of abnormalities in CU National's monthly reports or experienced substantial delays in collecting money from CU National, those might speak directly to the discovery condition because they could be facts which would have caused a reasonable person in Picatinny's position to assume a loss might occur.

## I.    CUMIS' Interrogatories, Set One

On October 24, 2011 CUMIS served its first set of interrogatories on Picatinny, to which Picatinny responded on December 19, 2011.[2] Even accounting for Picatinny's supplemental responses, Picatinny still has not responded to interrogatories seeking basic information about its claim. In particular, Picatinny has failed to properly respond to the following interrogatories.[3]

## II.    Picatinny has failed to respond to CUMIS' Interrogatories

### Interrogatory Number 3

Interrogatory number 3 seeks information regarding Picatinny's litigation with Fannie Mae. Picatinny stated that it would supplement its response only with respect to "post-fraud discovery communications with Fannie Mae" and discussions concerning the settlement.[4] This is insufficient for two reasons. First, Condition 12(b) of the Bond states Picatinny must undertake reasonable efforts to mitigate its loss, and therefore, discovery into the reasonableness of Picatinny's settlement with Fannie Mae is relevant. To fully analyze the reasonableness of the settlement, it is not sufficient to only evaluate settlement negotiations, but it is also necessary to analyze documents relating to the relative strengths and weaknesses in substantive, evidentiary and discovery issues.

---

[2] CUMIS' first set of interrogatories and Picatinny's responses are attached as Exhibits B and C, respectively.
[3] CUMIS' March 16, 2012 and May 10, 2012 letters to Picatinny regarding Picatinny's responses to CUMIS' interrogatories, set one are attached as Exhibits D and E, respectively.
[4] *See* Picatinny's April 18, 2012 letter to CUMIS, page 1, attached as Exhibit F.

The Honorable Madeline Cox Arleo
Re: Picatinny Federal Credit Union v. CUMIS Insurance Society, Inc.
   Civ. Action No. 2:11-cv-04853 (WHW)(MCA)
   Proponent Federal Credit Union v. CUMIS Insurance Society, Inc.
   Civ. Action No. 2:11-cv-05760 (WHW)(MCA)
   Status Conference Date: Friday, May 11, 2012 at 12:30 PM
Page 4


Additionally, many of the issues in the Fannie Mae litigation are directly relevant in the present litigation.  This is especially the case for documents concerning the issue of whether CU National/U.S. Mortgage had authority to sell the loans Picatinny claims were sold without authorization.  Also, documents related to when Fannie Mae purchased the loans, and the loan documents Fannie Mae relied on are relevant to evaluating the reasonableness of Picatinny's settlement with Fannie Mae.  Those documents are relevant to the present matter, they are not included in the scope of Picatinny's "supplemented response" and should be produced.

### **Interrogatory Numbers 4, 14, 16, and 19-21**

Interrogatory numbers 4, 14, 16 and 19-21 seek information regarding all loans CU National/U.S. Mortgage sold and serviced for Picatinny, as well as information regarding payments made by CU National/U.S. Mortgage to Picatinny.  Picatinny objects, claiming that loans sold with authorization (the "authorized loans") have no relevance to the present litigation.  However, Picatinny is wrong and the information is relevant for three reasons.

First, CUMIS is entitled to investigate Picatinny's allegation that CU National/U.S. Mortgage sold its loans without authorization by investigating what constituted proper authorization.  This can be completed by evaluating the process by which Picatinny conveyed its authorization and the documents conveying that authorization.  For example, if Picatinny permitted CU National to sign documents on Picatinny's behalf for authorized loan sales this would be relevant to determine whether Picatinny took reasonable measures to protect itself and mitigate its loss.

Second, the "Discovery Condition" of the Bond provides that Picatinny discovered the loss, for purposes of the Bond, when it learned of facts which would have caused a "reasonable person to assume" that a loss had, or would, occur.  Therefore, all red flags, even those relating to authorized loans, are relevant to discovery if they should have alerted a reasonable person that a fraud might occur.  For example, if the documents show that CU National constantly was late in remitting funds to Picatinny, or had been underpaying Picatinny, that all is relevant to whether Picatinny should have discovered its loss sooner.

Third, the Bond states that coverage for loss caused by an employee is terminated at any point that Picatinny learned that the employee committed a dishonest or fraudulent act.  This dishonest or fraudulent act does not have to be related to the claim.  If Picatinny was aware of a dishonest act, coverage terminates then.  Therefore, if documents concerning the authorized loans show that Picatinny learned of dishonesty or fraud by CU National in the past, then that would be relevant.

For the above reasons, Picatinny's current responses are not sufficient and Picatinny should be ordered to produce all responsive documents.

The Honorable Madeline Cox Arleo
Re: Picatinny Federal Credit Union v. CUMIS Insurance Society, Inc.
  Civ. Action No. 2:11-cv-04853 (WHW)(MCA)
  Proponent Federal Credit Union v. CUMIS Insurance Society, Inc.
  Civ. Action No. 2:11-cv-05760 (WHW)(MCA)
  Status Conference Date: Friday, May 11, 2012 at 12:30 PM
Page 5


**Interrogatory Number 29**

Interrogatory number 29 requests information concerning any "complaints or concerns" received by Picatinny which related to dishonesty by CU National/U.S. Mortgage. Picatinny refused to respond with respect to any complaints lodged before the discovery of the alleged fraud. This response is completely insufficient because the interrogatory is largely aimed at whether Picatinny knew of dishonesty or fraud before the fraud triggering the termination condition in the Bond.

For example, Picatinny CEO Bill Darling testified in the Fannie Mae litigation that an internal auditor whether CU National was defrauding Picatinny's customers years before the fraud was supposedly discovered. Information concerning the concerns raised by this internal auditor, Picatinny's members and others is relevant and therefore, Picatinny should be ordered to produce the requested information.

### III.    Picatinny has failed to respond to CUMIS' Requests for Production

CUMIS propounded its first set of requests for production on October 24, 2011, to which Picatinny responded on December 19, 2011.[5] After meeting and conferring, CUMIS complied with the agreement and provided a supplemental document production to Picatinny on April 4, 2012. However, CUMIS only received a supplemental production from Picatinny on Thursday, May 10, 2012 – the day before the scheduled status conference.

With respect to the documents Picatinny has produced, Picatinny's deficient responses can be broken down into two categories: (1) Picatinny's refusal to produce documents related to authorized loans, and (2) Picatinny's refusal to produce documents relating to audits, reviews, or other materials related to determining when Picatinny discovered its loss and the application of the termination condition under the Bond. Additionally, Picatinny has produced a surprisingly fewer emails than expected given that Picatinny and CU National had been working together since 1999.[6]

**Picatinny Must Produce Documents Relating to Authorized Loans**

Request numbers 4, 21, 24, 28, 29, 30-32 and 38-39 requests various documents concerning both authorized and unauthorized loans. Picatinny has generally objected that documents concerning the authorized loans are irrelevant. However, documents concerning authorized loans are relevant to (1) verifying Picatinny's claims regarding authorization, (2) determining when Picatinny had sufficient facts to "discover" the alleged loss under the Bond, and (3) whether Picatinny knew of any dishonest or fraudulent acts by CU National/U.S. Mortgage that triggered termination.

---

[5] CUMIS requests for production, set one, and Picatinny's responses are attached as Exhibits G and H, respectively.
[6] Additionally, Picatinny failed to produce documents responsive to request number 36, which seeks documents relating to other servicers Picatinny has utilized. CUMIS refers the court to its March 16, 2012 letter (Exhibit D) and May 10, 2012 letter (Exhibit E) for further information on the request.

Case 2:11-cv-04853-ES-MCA   Document 43   Filed 05/10/12   Page 6 of 10 PageID: 913

The Honorable Madeline Cox Arleo
Re:  Picatinny Federal Credit Union v. CUMIS Insurance Society, Inc.
     Civ. Action No. 2:11-cv-04853 (WHW)(MCA)
     Proponent Federal Credit Union v. CUMIS Insurance Society, Inc.
     Civ. Action No. 2:11-cv-05760 (WHW)(MCA)
     Status Conference Date: Friday, May 11, 2012 at 12:30 PM
Page 6

**Picatinny Must Produce Documents Relating to Audits, Reviews and NCUA Supervision**

Request numbers 5-7 and 12-14 seeks various audits, reviews and NCUA documents concerning Picatinny's relationship with, and monitoring of, CU National/U.S. Mortgage. The documents are relevant to the discovery condition because if the documents show that a reasonable person in Picatinny's position should have been able to assume that a loss would occur, then discovery occurred no later than the date of those documents. Additionally, the documents are relevant to the termination condition because if an auditor (such as the internal auditor discussed in Mr. Darling's deposition) specifically raised previous instances of fraud or dishonesty by CU National, then that would trigger the termination condition in the Bond.

Picatinny states that it will only provide a supplemental response of documents prepared before the discovery of the fraud. This, however, is insufficient. Responsive documents prepared after the fraud are relevant because speak to whether Picatinny should have discovered the loss and sooner and whether Picatinny was aware of any dishonest or fraudulent conduct by CU National/U.S. Mortgage which triggered the termination condition in the Bond. This is particularly the case for "post-mortem" audits and reviews which would necessarily have been generated after the fraud and almost certainly relate to relevant subjects.

**Picatinny Has Not Produced All Responsive Communications**

A number of CUMIS' requests, such as numbers 29 and 40, seek internal and external communications relating to CU National/U.S. Mortgage. However, Picatinny has produced roughly 60 pages of emails, far fewer than what would be expected given that Picatinny's relationship with CU National dates back to 1999.[7] It does not appear that Picatinny has made a reasonable effort to search its own records for emails and communications or completed its production. Furthermore, Picatinny failed to produce the search terms it utilized, as it promised. Picatinny should therefore supplement its production and provide the list of search terms it used.

**CUMIS' DISCOVERY RESPONSES**

**I.   CUMIS' Responses to Picatinny's Interrogatories, Set One**

**Interrogatory Number 13**

Interrogatory number 13 requests that CUMIS identify the underwriters for Bonds issued to Picatinny and state their role in the underwriting process. In response, CUMIS identified underwriters who worked on the Picatinny account. Picatinny now complains that CUMIS did not lay out in detail what each underwriter did. However, FRCP 33(d) permits CUMIS to refer Picatinny to documents when the

---

[7] The approximately 60 pages of emails does not include any emails in Picatinny's supplemental production, as the supplemental production was received the day before the status conference and CUMIS did not have an opportunity to review the documents before filing this letter.

The Honorable Madeline Cox Arleo
Re: Picatinny Federal Credit Union v. CUMIS Insurance Society, Inc.
   Civ. Action No. 2:11-cv-04853 (WHW)(MCA)
   Proponent Federal Credit Union v. CUMIS Insurance Society, Inc.
   Civ. Action No. 2:11-cv-05760 (WHW)(MCA)
   Status Conference Date: Friday, May 11, 2012 at 12:30 PM
Page 7

burden of ascertaining the information from the documents is equal to both parties. Since the underwriting file contains all documentation of the underwriting of Picatinny's Bonds, all of the information concerning what the underwriters did is located in the underwriting file. Accordingly, CUMIS is entitled to refer Picatinny to the documents and properly did so pursuant to FRCP 33(d). Picatinny is now simply trying to force CUMIS to do Picatinny's work.

**Interrogatory Number 16**

Interrogatory number 16 requests the duties and job responsibilities for a number of positions within CUMIS. CUMIS responded by referring Picatinny to detailed job descriptions in a document CUMIS produced. Picatinny's claim that CUMIS did not respond to interrogatory number 16 is untrue it is unclear why Picatinny alleges that CUMIS did not respond.

**Interrogatory Number 18**

Interrogatory number 18 requests CUMIS to describe the investigation of Picatinny's claim and the claims of any other credit union relating to the actions of CU National/U.S. Mortgage. CUMIS responded by describing its investigation of Picatinny's claims despite the fact that CUMIS' investigation is irrelevant. In a tolling agreement negotiated between CUMIS and Picatinny, Picatinny admitted:

> "CUMIS agreed to refrain during the tolling period from further investigating the claims asserted by [Picatinny]." [8]

The tolling agreement was dated May 15, 2009. Picatinny complains that CUMIS describe any investigation after May 9, 2009. However, the investigation of Picatinny's claim was halted shortly after May 9, 2009 when the tolling agreement was signed on May 15, 2009. Accordingly, CUMIS has not failed to describe the relevant portions of its investigation.

Furthermore, Picatinny also admitted:

> that CUMIS has acted in good faith since it received notice of the potential claim and the Proof of Loss…"

Therefore, Picatinny's claim that information regarding CUMIS' investigation is relevant is incorrect because Picatinny has already admitted that the investigation was conducted in good faith. CUMIS already responded to interrogatory number 18 with information concerning its investigation of Picatinny's claim, and no further response is required because additional details are irrelevant under the terms of the tolling agreement Picatinny signed.

Further, information concerning the investigation of other credit unions' claims is also irrelevant and confidential. The information is irrelevant because Picatinny has already admitted that CUMIS acted in

---

[8] *See*, Tolling Agreement, attached as Exhibit I.

Case 2:11-cv-04853-ES-MCA   Document 43   Filed 05/10/12   Page 8 of 10 PageID: 915

The Honorable Madeline Cox Arleo
Re:   Picatinny Federal Credit Union v. CUMIS Insurance Society, Inc.
        Civ. Action No. 2:11-cv-04853 (WHW)(MCA)
        Proponent Federal Credit Union v. CUMIS Insurance Society, Inc.
        Civ. Action No. 2:11-cv-05760 (WHW)(MCA)
        Status Conference Date: Friday, May 11, 2012 at 12:30 PM
Page 8

good faith, leaving the interpretation and application of the Bond as the only issue remaining for resolution by the Court.  The documents are confidential because CUMIS is legally obligated to protect and preserve the confidentiality and privacy of its customers.  CUMIS cannot simply hand over sensitive documents to its customers' potential competitors without, at minimum, their written consent.  Further, the documents contain proprietary information because they may reveal the products and rates offer to other credit unions as well as confidential details of the finances of other credit unions, some of which may be competitors of Picatinny.

However, notwithstanding those objections, CUMIS repeats that it has made an offer to compromise with Picatinny on the documents relating to other credit unions' claims.  CUMIS has offered Picatinny that if Picatinny obtains the written consent of the other credit unions and produced (1) all communications with CU National, (2) all due diligence, audits (internal and external) and monitoring of CU National, and all documents related to all loans (both authorized and unauthorized) that CU National serviced for Picatinny, CUMIS will produce the claim documents for all of the credit unions affected by the actions of CU National/U.S. Mortgage.  If Picatinny is willing to fully comply with the terms of the offer, the offer remains open.

**Interrogatory Number 20**

Interrogatory number 20 requests information concerning communications CUMIS had with "any person" before January 27, 2009 concerning U.S. Mortgage.  Recognizing that this request was overbroad, following a meet and confer Picatinny narrowed the request to all communications referring to U.S. Mortgage as a servicer for any credit union.  CUMIS objected because Picatinny's narrowed request still does not resolve the central overbreadth issue, which is that the request sweeps in communications between CUMIS and any person, with no limitation as to who the communications were with.  The request, seeks documents related to claims of other credit unions which are irrelevant and confidential, privileged attorney-client communications, and other communications which do not address any matter which is at issue in the present case. As always, CUMIS remains willing to respond if and when Picatinny narrows its request to a reasonable level.

> II.   **CUMIS' Responses to Picatinny's Requests for Production, Sets One and Two**

Picatinny's letter to the court raises three specific issues regarding CUMIS' response to Picatinny's requests for production.  CUMIS addresses Picatinny's three issues in turn.[9]

**CUMIS' Supplemental Production**

On April 5, 2012 CUMIS provided a supplemental production to Picatinny pursuant to the parties March 27, 2012 meet and confer.  Picatinny now complains that CUMIS has not explicitly identified what the

---

[9] CUMIS refers the court to its March 13, 2012 letter and May 4, 2012 letter, attached as Exhibits J and K, respectively, for additional details concerning CUMIS' response to Picatinny's discovery.

Case 2:11-cv-04853-ES-MCA   Document 43   Filed 05/10/12   Page 9 of 10 PageID: 916

The Honorable Madeline Cox Arleo
Re: Picatinny Federal Credit Union v. CUMIS Insurance Society, Inc.
   Civ. Action No. 2:11-cv-04853 (WHW)(MCA)
   Proponent Federal Credit Union v. CUMIS Insurance Society, Inc.
   Civ. Action No. 2:11-cv-05760 (WHW)(MCA)
   Status Conference Date: Friday, May 11, 2012 at 12:30 PM
Page 9

documents are and which requests they are responsive to. However, the documents are clearly self-identifying and Picatinny's objections are meritless.

**Claim Documents for Other Credit Unions**

In its letter to the Court, Picatinny repeats its contention that documents relating to the claims of other credit unions must be produced. However, the documents are irrelevant and confidential. Contrary to Picatinny's assertion, CU National's relationship with all the credit unions varied based on their course of dealing and contractual relationship. For example, CU National did not service Proponent's loans, while it did service Picatinny's loans. The factual and legal issues attending to coverage will likewise vary based on the unique factual circumstances of each claim. Additionally, documents relating to any credit union cannot be relevant to a claims handling issue since Picatinny has already admitted that CUMIS handled its claim in good faith.

Furthermore, CUMIS is legally obligated to protect the privacy and confidentiality of its customers. CUMIS would breach this obligation if it simply turned over credit unions' claim documents without their notification or permission.

Notwithstanding those objections, CUMIS repeats that it has made an offer to compromise with Picatinny. CUMIS has offered Picatinny that if Picatinny obtains the written consent of the other credit unions and produced (1) all communications with CU National, (2) all due diligence, audits (internal and external) and monitoring of CU National, and all documents related to all loans (both authorized and unauthorized) that CU National serviced for Picatinny, CUMIS will produce the claim documents for all of the credit unions affected by the actions of CU National/U.S. Mortgage. If Picatinny is willing to fully comply with the terms of the offer, the offer remains open.

Lastly, Picatinny makes the argument that other credit unions' claims are relevant because decisions in litigation brought by other credit unions might have a preclusive effect on Picatinny's claim. However, there have been no decisions relating to coverage in any case, except for an order in Sperry, and the Sperry order has no preclusive effect because the issues in Sperry are not identical and the Sperry order is not a final judgment on the merits.

**Picatinny's Search Terms**

Picatinny incorrectly alleges that CUMIS improperly failed to search its records using the search terms it provided. As CUMIS has made clear in its correspondence with Picatinny, all documents relating to Picatinny's claim are contained in the claim file and underwriting file. Therefore, with respect to Picatinny's claim, the search terms are a moot issue because Picatinny already has the non-privileged documents pertaining to its claim.

The Honorable Madeline Cox Arleo
Re:  Picatinny Federal Credit Union v. CUMIS Insurance Society, Inc.
   Civ. Action No. 2:11-cv-04853 (WHW)(MCA)
   Proponent Federal Credit Union v. CUMIS Insurance Society, Inc.
   Civ. Action No. 2:11-cv-05760 (WHW)(MCA)
   Status Conference Date: Friday, May 11, 2012 at 12:30 PM
Page 10

**CUMIS' Privilege Log**

CUMIS has received Picatinny's letter regarding its privilege log and advised Picatinny that CUMIS will be responding shortly.  It is CUMIS' belief that its response will resolve a number of the issues Picatinny raises.  Accordingly, this issue is not ripe for judicial resolution at this time.

## PROPONENT'S LETTER TO THE COURT

Lastly, Proponent has written the court to state that CUMIS did not respond to its request for a meet and confer prior to the status conference.  However, as the time Proponent requested the meet and confer it had not even responded to CUMIS' letter laying out discovery issues.  CUMIS only received Proponent's letters on May 7, 2012 along with a demand that CUMIS provide a response to lengthy letter by the next day.  Proponent's demand for an overnight response was unreasonable, particularly given the responses also due to Picatinny's letter to the court.  On May 10, 2012 CUMIS responded to proponent's letters, and offered a similar compromise to Proponent as is offered to Picatinny regarding the claim files for other credit unions.  CUMIS and Proponent will meet and confer telephonically shortly and CUMIS hopes that most discovery issues will be resolved through negotiation.


Respectfully Submitted,

s/Arthur Aizley

Arthur Aizley
Michael R. Davisson
Valerie D. Rojas
Sedgwick LLP


MRD:KU

LA/1195720v1